UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| VS. | § | CRIMINAL ACTION NO. C-12-418-7 |
| RAMON ZAMORA | § § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is Defendant Ramon Zamora's Motion to Suppress. (D.E. 175.) Defendant argues that the warrant federal agents relied upon in searching his residence at ▮▮▮▮▮ in Rio Grande, Texas incorrectly identified the premises to be searched as ▮▮▮▮▮, and that this lack of particularity invalidates the search warrant. Defendant therefore requests that any evidence seized during the search be suppressed and excluded as evidence in this case. After a hearing on the motion and having fully considered the relevant evidence and legal authority, Defendant's motion is DENIED. The Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On June 14, 2012, agents from the Department of Homeland Security and local law enforcement went to Defendant Ramon Zamora's residence located at ▮▮▮▮▮ in Rio Grande City, Texas to execute an arrest warrant for Defendant.

2. Defendant's driver's license and his vehicle registration indicated that he lived at ▮▮▮▮▮.

3. The agents were unable to locate any residence with the street address ▮▮▮▮▮; however, a pickup truck registered to Defendant was observed parked outside of a residence on Fernando Salinas. There was a sign on the right side of the front door that indicated the residence belonged to Ramon and Norma

Zamora. There was an electrical box attached to the front of the residence with the numbers ███.

4. The correct street address of Defendant's residence is ███. Defendant's wife has a business located on the same lot as the couple's residence. The business's street address is ███. The power company incorrectly labeled the electrical box attached to the front of Defendant's residence with the numbers ███. Accordingly, the address of the residence plainly appears to be ███.

5. Clearly affixed above the front door of Ms. Zamora's business is a sign identifying it as a beauty salon. Therefore, there would not have been any confusion on the part of the agents as to which building housed the business and which building was Defendant's residence.

6. After having collected sufficient information to feel confident that they had located Defendant's residence, the agents approached the front of the house. The agents knocked on the door, and Defendant's wife answered. The agents asked if it was Defendant's residence and Ms. Zamora indicated that it was.

7. The agents explained to Ms. Zamora that they had an arrest warrant for her husband. At this time, Defendant came to the front door.

8. Defendant was placed under arrest. Special Agent Tim Sturdevant with Homeland Security Investigations (HSI) read Defendant his Miranda warnings. Defendant indicated that he understood the warnings and waived his rights.

9. Agent Sturdevant asked Defendant if he had any weapons in the house. Defendant indicated that he had several weapons located in three safes in his bedroom closet. Defendant indicated that all of the weapons had been legally obtained.

10. The agents then entered the house, went into Defendant's bedroom, and observed three large safes in the closet.

11. Agent Sturdevant asked Defendant if he would open the safes so that they could inspect the weapons. Defendant indicated that he could show the agents a list of the weapons inside the safes, but that he would not open the safes.

12. Having been denied permission to search the safes, the agents discontinued their search of the residence and went outside.

13. The information concerning the presence of a large number of weapons inside the house was relayed back to the Homeland Security office in Corpus Christi, Texas,

and HSI Special Agent Dale McNeal began preparing a search warrant for the residence.

14. The warrant indicated that Defendant's residence was located at ▓▓▓▓▓▓ do ▓▓▓▓; that it was a red/brown stucco single story residence with an iron fence around the front yard; that it had a gray roof and a white screen door with burglar bars; that the house displayed the number ▓▓▓ on the electrical box attached to the front of the residence; and that Defendant Zamora had been found inside the residence.

15. The warrant was approved by United States Magistrate Judge Brian L. Owsley.

16. After Special Agent Sturdevant received a copy of the signed warrant, he returned to the residence, knocked on the front door, and informed Ms. Zamora that the agents had obtained a search warrant and were going to search the house.

17. The agents seized numerous weapons, ammunition, and other items from the three safes located in the bedroom closet.

## CONCLUSIONS OF LAW

1. A search warrant must particularly describe the place to be searched and the person or things to be seized. U.S. CONST. amend. IV. The Court concludes that the search warrant in the case at hand satisfied the Fourth Amendment's particularity requirement.

2. "The test for determining the adequacy of the description of the location to be searched is whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *United States v. Pervaz*, 118 F.3d 1, 9 (1st Cir. 1997) (internal quotations omitted); *see also United States v. Lora-Solano*, 330 F.3d 1288, 1293 (10th Cir. 2003). In the case at hand, the warrant very accurately described the premises to be searched, and there was no probability that another premise might be mistakenly searched.

3. "Practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the premises to be searched." *United States v. Dorrough*, 927 F.2d 498, 500 (10th Cir. 1991). Thus, a technically wrong address does not invalidate a warrant if the warrant otherwise describes the premises with sufficient particularity so that the officer executing the warrant can accurately identify the place to be searched. *See Steel v. United States*, 267 U.S. 498, 503 (1925) ("It is enough if the description is such that the officer

with a search warrant can, with reasonable effort ascertain and identify the place intended.").

4. The fact that the warrant in the case at hand incorrectly identified the place to be searched as ▬▬▬▬▬▬▬ does not invalidate the warrant. The warrant described the place to be searched with such particularity that there would have been no doubt on the part of any reasonable officer executing the warrant as to the intended premises.

5. Lastly, the Court concludes that the exclusionary rule does not apply in the case at hand because the agents' reliance on the truthfulness and accuracy of the warrant's description of the premises was objectively reasonable. Consequently, even if the warrant were invalidated, the evidence should not be suppressed. *See United States v. Leon*, 468 U.S. 897, 919–20 (1984); *United States v. Price*, 265 F.3d 1097, 1102 (10th Cir. 2001) ("When police officers act in good faith and reasonable reliance on a search warrant, the evidence obtained during the search should not be suppressed even if the warrant was lacking in probable cause.").

## CONCLUSION

For the reasons set forth above, Defendant Ramon Zamora's Motion to Suppress (D.E. 175) is DENIED.

ORDERED this 27th day of September, 2012.

*Nelva Gonzales Ramos*
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE